[Civ. No. 37809. Second Dist., Div. One. Sept. 26, 1974.]

WESTINGHOUSE ELECTRIC CORPORATION,
Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

[And 15 other cases.]‡

‡Westinghouse Electric Corporation v. County of Los Angeles (Civ. No. 37810); Shell Oil Company v. County of Los Angeles (Civ. No. 37811); Shell Oil Company v. County of Los Angeles (Civ. No. 37812); McDonnell Douglas Corporation, Inc. v. County of Los Angeles (Civ. No. 37813); Litton Systems, Inc. v. County of Los Angeles (Civ. No. 37814); Litton Precision Products, Inc. v. County of Los Angeles (Civ. No. 37815); Litton Systems, Inc. v. County of Los Angeles (Civ. No. 37816); Litton Precision Products, Inc. v. County of Los Angeles (Civ. No. 37817); Gilfillan Corporation v. County of Los Angeles (Civ. No. 37818); International Telephone and Telegraph Corporation v. County of Los Angeles (Civ. No. 37819); Barton Instruments Corporation v. County of Los Angeles (Civ. No. 37820); Hayes Furnace Manufacturing & Supply Company v. County of Los Angeles (Civ. No. 37821); ITT General Controls, Inc. v. County of Los Angeles (Civ. No. 37822); International Telephone and Telegraph v. County of Los Angeles (Civ. No. 37823); International Telephone and Telegraph v. County of Los Angeles (Civ. No. 37824).

**COUNSEL**

Poindexter, Lynch & Buchanan, Poindexter & Doutre, Alfred B. Doutre, John B. Marshall, William M. Poindexter, G. Donald Haarer, Charles E. Foster, Deane E. McCormick, Jr., Louis Lieber, Jr., B. D. Freundlich, Eberhard Schmoller, Edward Stevens and John H. Carroll, Jr., for Plaintiffs and Appellants.

John D. Maharg and John H. Larson, County Counsel, A. R. Early, Assistant County Counsel, and Dixon M. Holston, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**THOMPSON, J.**—In these 16 consolidated actions, we consider the right of appellants, taxpayers, to recover ad valorem personal property taxes paid without first pursuing their administrative remedies before the county

board of equalization to reduce their assessments. We conclude that the facts[1] which govern our action do not excuse appellants from their duty to exhaust administrative remedies. We accordingly affirm the trial court's judgments for respondents.

Without first seeking administrative review before the county board of equalization, appellants filed their lawsuits to recover ad valorem taxes paid by them on business personal property located in the County of Los Angeles. The theory of the actions is that appellants' property was taxed based upon a discriminatory assessment ratio, having been systematically valued at 50 percent of market value, whereas the average ratio of assessed to market value of other property subject to the ad valorem tax was 25 percent or less.[2]

"Ordinarily a taxpayer seeking relief from an erroneous assessment [of ad valorem property tax] must exhaust available administrative remedies before resorting to the courts [citations]. Prior application to the local board of equalization has not been required, however, in certain cases

---

[1]Some of the cases involve appeals from judgments of dismissal after demurrers were sustained. In those, we treat the facts alleged in the complaints as true. Others reach us on summary judgment granted on respondents' motion. There we have considered respondents' declarations strictly and appellants' liberally to determine whether, as a matter of law and without a triable issue of fact, a defense to appellants' claims has been established.

[2]As pled and claimed in the respective actions according to the transcripts and assumed to be true for purposes of this opinion:

No. 37811—Valuation date March 7, 1960; assessed valuation ratio 50 percent for personal property and 23 percent for real property; refund claim filed in December 1963 and denied in February 1964.

Nos. 37809 and 37810—Valuation date March 5, 1961 (erroneously stated as "March 5, 1960" in No. 37810); assessed valuation ratio 50 percent for personal property and 24 percent "or less" for real property; refund claim filed in August 1963 and denied in December, 1963.

Nos. 37812 through 37815—Valuation date first Monday March 1961; assessed valuation ratio 50 percent for personal property and 24.4 percent for all other property; refund claim filed in August 1964 and denied in November 1964.

Nos. 37816 and 37817—Valuation date first Monday March 1962; assessed valuation ratio 50 percent for personal property and 24.6 percent for all other property; refund claim filed in August 1965 and denied in February 1966.

Nos. 37818 through 37823—Valuation date March 4, 1963; assessed valuation ratio 39 percent for personal property and 24 percent for all other property; refund claim filed in August 1966 and denied in December 1966 in Nos. 37818 through 37820; refund claim filed in December 1966 and denied in February 1967 in No. 37821; refund claim in Nos. 37822 and 37823 filed in December 1966 but mistakenly stated to have been denied in February 1966 in third (and last) amended complaint.

No. 37824—Apparently taxed as escaped property; valuation date March 4, 1963; assessed valuation ratio 39 percent for personal property and 24 percent for all other property; refund claim filed in January 1967 and granted as to 8 percent penalty but denied as to remainder in May 1967.

where the facts were undisputed and the property assessed was tax-exempt [citations], outside the jurisdiction [citation], or non-existent [citations]" (*Star-Kist Foods, Inc.* v. *Quinn,* 54 Cal.2d 507, 509-510 [6 Cal.Rptr. 545, 354 P.2d 1]; see also *Virtue Bros.* v. *County of Los Angeles,* 239 Cal. App.2d 220 [48 Cal.Rptr. 505], and cases there cited at pp. 231-232), or where the assessment is void for failure to follow statutory procedure (*Gaumer* v. *County of Tehama,* 247 Cal.App.2d 548 [55 Cal.Rptr. 777]; *Tamco Dev. Co.* v. *County of Del Norte,* 260 Cal.App.2d 929 [67 Cal. Rptr. 590]). Appellants in the case at bench do not contend that the property upon which tax was assessed is tax-exempt, outside the jurisdiction, or nonexistent, nor do they claim that statutory procedure was not followed. They argue that: (1) failure to exhaust administrative remedies is an affirmative defense which must be established at trial; (2) the doctrine of exhaustion of administrative remedies should no longer be applied in property tax cases; (3) the failure is excused by the special facts here present particularly because the overassessment is the result of an improper assessment ratio as opposed to an excess determination of market value to which the ratio is applied; and (4) the assessments are void and not merely erroneous because the assessment practice applied deprived them of equal protection and denied them due process of law.

■ *Burden of establishing exhaustion of administrative remedy.* Contrary to appellants' contention, it is their burden to plead and establish as a part of their case in chief that they exhausted their administrative remedy by protest of the assessment to the county board of equalization (*Stenocord Corp.* v. *City etc. of San Francisco,* 2 Cal.3d 984, 986 [88 Cal.Rptr. 166, 471 P.2d 966]), or that facts exist which excuse that action (*Virtue Bros.* v. *County of Los Angeles, supra,* 239 Cal.App.2d 220, 231-232). Thus we reach the matter on the merits.[3]

■ *Continued vitality of doctrine of exhaustion of administrative remedies in ad valorem tax cases.* Relying upon California Constitution, article XIII, section 15, and Revenue and Taxation Code sections 5103 and 5138,[4]

---

[3] By reason of the rule of burden of pleading, it is not necessary to distinguish the cases arising on demurrer where the complaints fail to allege exhaustion of administrative remedy from those reaching us on summary judgment where the failure is established.

[4] At all times since its amendment in 1933, the third paragraph of California Constitution, article XIII, section 15, has read: "No injunction or writ of mandate or other legal or equitable process shall ever issue in any suit, action or proceeding in any court against this State, or any officer thereof, to prevent or enjoin the collection of any tax levied under the provisions of this article; but after payment thereof action may be maintained to recover, with interest, in such manner as may be pro-

appellants contend that a suit for refund of ad valorem property tax may be maintained without a prior protest of assessment to the county board of equalization. Those provisions of the California Constitution and statutes unquestionably authorize suits for refund of property tax. Neither they nor any other provision of the California law, however, expressly dispense with the taxpayer's obligation to exhaust his administrative remedies as a condition precedent to suit. Without that dispensation, the administrative remedy must be pursued. (*El Tejon Cattle Co.* v. *County of San Diego,* 252 Cal.App.2d 449, 463 [60 Cal.Rptr. 586]; *County of Sacramento* v. *Assessment Appeals Bd. No. 2,* 32 Cal.App.3d 654, 665 [108 Cal.Rptr. 434]; see also *Southern Service Co., Ltd.* v. *[County of] Los Angeles,* 15 Cal.2d 1, 14-15 [97 P.2d 963]; *Flores* v. *Los Angeles Turf Club,* 55 Cal.2d 736, 746-747 [13 Cal.Rptr. 201, 361 P.2d 921]; *Woodard* v. *Broadway Fed. S. & L. Assn.,* 111 Cal.App.2d 218, 220-221 [244 P.2d 467].) Appellants extend their contention with the argument that the refund procedure authorized in Revenue and Taxation Code section 5103 permits the exhaustion of administrative remedy by filing a refund claim with the county board of equalization (Rev. & Tax. Code, § 5096) although there was no protest of the assessment used as a basis of the tax within the statutory period for such protests. Our Supreme Court has answered an identical contention stating: ". . . [A] claim for refund is an adequate substitute for a request for equalization only in those cases wherein the assessment is totally void as an attempt to tax property not subject to taxation, rather than merely an inaccurate assessment of the value of taxable property [citations]." (*Stenocord Corp.* v. *City etc. of San Francisco, supra,* 2 Cal. 3d 984, 990.)

*Special facts.* Appellants argue that whatever may be the general obligation of a taxpayer to exhaust his administrative remedies, special facts present in the cases at bench excuse that obligation. They assert that the matters before us are unique in that: (1) they involve the application of a discriminatory ratio of assessed value to market value rather than an

vided by law, any tax claimed to have been illegally collected." Prior to its amendment in 1967, section 5103 (Rev. & Tax. Code) provided in part: "If the board of supervisors rejects a claim for refund in whole or in part, the person who paid the taxes, his guardian, executor, or administrator may within six months after such rejection commence an action in the superior court against the county or a city to recover the taxes which the board of supervisors or the city council have refused to refund." (§ 5103 is part of art. 1 which concerns claims for refunds.) Prior to its amendment in 1967, section 5138 provided in part: "Within six months after the payment, an action may be brought against a county or a city in the superior court to recover the taxes paid under protest." (§ 5138 is part of art. 2 which concerns taxes paid under protest.) The parties assume and we agree that the statutes in existence at the times involved in these lawsuits (see fn. 2, *supra*) apply.

overstatement of market value itself; (2) the county board of equalization had preconceived its assessment ratio, having "consistently failed to equalize assessments on business personal property with respect to the ratio generally applied to all property in the county"; (3) the taxpayers' case before the board would have involved an "impossible" burden of proof, the cost of meeting the burden would have been "prohibitive," the term of hearings before the board was too short to permit adequate preparation and presentation of their case and too short to permit an adequate hearing, and the statewide assessment ratio determined by the State Board of Equalization was not available in time to be produced before the county board; (4) the board practiced a "systematic fraud" in that in ratio discrimination cases it relied solely on false testimony of the assessor or his deputies as to the county-wide ratio and excluded taxpayer evidence of the "true" ratio, the board falsely advised of the ratio for the purpose of misleading taxpayers until it was too late for them to protest to it; (5) the taxpayer had no right before the board to pursue discovery or to subpena witnesses although the board could subpena witnesses; (6) the board was not required to make findings; (7) the workload of the board was so great as to preclude a fair hearing; and (8) no provision for adequate review of the board's action is provided.

In the context of the requirement that a taxpayer exhaust his administrative remedies by protest to the county board of equalization before instituting court action to recover an overpayment of property tax, a tax allegedly excessive because it is based upon a discriminatory ratio of assessment is treated identically with any other overpayment based upon overvaluation. The administrative remedy must be pursued as a condition precedent to the lawsuit. (*Dawson* v. *County of Los Angeles,* 15 Cal.2d 77, 79-81 [98 P.2d 495], contention that intangible personal property assessed at 100 percent of market value while real property assessed at 50.2 percent; *Virtue Bros.* v. *County of Los Angeles, supra,* 239 Cal.App.2d 220, 231-232, contention that taxpayer's property assessed at 50 percent of market value while other property was assessed at 20.4 percent.) Thus the proposition that appellants' claim of excessive personal property taxation is based upon a contention that an erroneously high ratio of taxable value to market value was utilized by the assessor does not excuse appellants from the requirement that they have exhausted their remedy before the county board of equalization before filing the lawsuit at bench.

California courts have previously considered and rejected the proposition that the rule of exhaustion of administrative remedy does not apply where an appeal to an administrative agency will be fruitless by reason of its decisions in like cases. (*City of Los Angeles* v. *California Towel &*

*Linen Supply Co.,* 217 Cal.App.2d 410, 420 [31 Cal.Rptr. 832]; *Virtue Bros.* v. *County of Los Angeles, supra,* 239 Cal.App.2d 220, 232; see also *Gilchrist* v. *Interborough Co.,* 279 U.S. 159, 209 [73 L.Ed. 652, 664-665, 49 S.Ct. 282]; *United States* v. *Felt & Tarrant Co.,* 283 U.S. 269, 272-273 [75 L.Ed. 1025, 1027, 51 S.Ct. 376]; *United States Nav. Co.* v. *Cunard S. S. Co.,* 284 U.S. 474 [76 L.Ed. 408, 52 S.Ct. 247]; *Red River Broadcasting Co.* v. *Federal C. Commission,* 98 F.2d 282 [69 App.D.C. 1].) That precedent compels rejection of appellants' identical contention in the case at bench.

Appellants' claim that exhaustion of administrative remedy is excused because the remedy would have involved an impossible burden of proof, would have been too expensive, would not have afforded an adequate opportunity for preparation and hearing, and would have denied them discovery is but another way of alleging that a hearing before the county board of equalization would have been unfair and fruitless. The law precludes such an assumption as an excuse to the condition precedent to suit. (*Hunt-Wesson Foods, Inc.* v. *County of Stanislaus,* 273 Cal.App.2d 92, 93-94 [77 Cal.Rptr. 832].)

Appellants make much of the fact that a hearing before the county board would have been a useless gesture because county-wide assessment ratios for the taxable years determined by the State Board of Equalization would not have been available within the period when the county board was required to act. Precedent dictates, however, that the state board computations are not usable to establish that a county assessor's assessment is erroneous. (*Glidden Company* v. *County of Alameda,* 5 Cal.App.3d 371 [85 Cal.Rptr. 88, 86 Cal.Rptr. 464]; *Griffith* v. *County of Los Angeles,* 267 Cal.App.2d 837 [73 Cal.Rptr. 773].)

The argument that the rule of exhaustion of administrative remedies is excused where the governmental agency acts fraudulently has also been presented previously to the California courts. In *Los Angeles etc. Co.* v. *County of L. A.,* 162 Cal. 164, 171 [121 P. 384, 9 A.L.R. 1277], our Supreme Court, citing *Crawford* v. *Polk Co.,* 112 Iowa 118 [83 N.W. 825], said: " 'An error in over-valuation [for the purposes of taxation] . . . if fraudulent differs from [other] [errors] only with respect to the motive of the assessor. The same remedy is available.' . . . [F]raud on the part of the assessor does not make the assessment void, but . . . the taxpayer must pursue the method pointed out by statute for any review thereof." (See also *Luce* v. *City of San Diego,* 198 Cal. 405 [245 P. 196]; *Eastern-Columbia, Inc.* v. *County of L. A.,* 61 Cal.App.2d 734, 746 [143 P.2d 992].) Cases cited for a contrary position by appellants stand for the prop-

osition that an assessment of property taxes may be attacked as fraudulent but do not involve the issue of exhaustion of administrative remedy. Precedent thus compels rejection of appellants' contention.

Appellants' contention that exhaustion of administrative remedies is excused here because there would have been no provision for meaningful review in light of the lack of a requirement that the county board of equalization make findings of fact[5] and in view of the limited jurisdiction of the superior court in testing the result of the board's determination by the substantial evidence rule similarly flies in the face of precedent. The same issues were inherent in the myriad of California decisions requiring exhaustion of the administrative remedy.

*Constitutionality of assessment procedure.* Finally, appellants urge that exhaustion of administrative remedies is not required in the cases at bench because the assessments are constitutionally void and not merely erroneous. They argue that they were denied equal protection of the law by the discriminatory nature of the assessment ratio employed and by the scope of judicial review provided them as contrasted with review of administrative determination of other taxes. They urge that they were denied due process of law by the extent of power over the assessment vested in the county board of equalization and lack of timely notice of the assessments.

Appellants' contention of excuse from the requirement of exhaustion of administrative remedy by reason of denial of equal protection of the law fails on the facts here present. The proposition that an ad valorem tax may be discriminatory in application or may otherwise deny equal protection of the law as applied does not excuse the taxpayer from pursuing his administrative remedy to correct the inequality where there is a remedy available to do so. "If any question of valuation exists, it would be irrelevant [to the issue of exhaustion of administrative remedy] that plaintiff also challenges the assessment as 'arbitrary' or void on constitutional grounds. [Citations.] If prior recourse to the board [of equalization] on the question of valuation might have avoided the necessity of deciding the constitutional issue, or modified its nature, plaintiff's action was properly dismissed. [Citation.]" (*Stenocord Corp.* v. *City etc. of San Francisco, supra,* 2 Cal.3d 984, 988; see also *Gorham Mfg. Co.* v. *Tax Comm.,* 266 U.S. 265, 269-270 [69 L.Ed. 279, 281-282, 45 S.Ct. 80].) Similarly, appellants, not having gone to the county board of equalization, are in no position to argue that had they done so judicial review of an adverse finding by the board

[5]But see *Topanga Assn. for a Scenic Community* v. *County of Los Angeles,* 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12].

would have been conducted in light of the "substantial evidence test" rather than as a limited trial de novo based upon the record in the administrative proceeding. They made no administrative record and thus failed to preserve the issue.[6]

■ Appellants' two-pronged contention of denial of due process of law similarly fails to find support in applicable precedent.

No denial of due process occurs because the facts fixing the amount of tax payable are determined by a duly constituted administrative tribunal rather than by a court.[7] "The phrase 'due process of law' does not necessarily mean a judicial proceeding. 'The nation from whom we inherit the phrase "due process of law," ' said the [United States Supreme] court, speaking by Mr. Justice Miller, 'has never relied upon the courts of justice for the collection of her taxes, though she passed through a successful revolution in resistance to unlawful taxation.' [Citation.] . . . It is enough, however, if the law provides for a board of revision authorized to hear complaints respecting the justice of the assessment, and prescribes the time during which and the place where such complaints may be made. [Citation.]" (*Palmer* v. *McMahon*, 133 U.S. 660, 668-669 [33 L.Ed. 772, 775-776, 10 S.Ct. 324].) Thus the fact that in the case at bench appellants' assessments of tax occur by reason of action by the county board of equalization duly constituted by the California Constitution for that purpose (art. XIII, § 9) rather than by action of a body denominated a court does not deny appellants due process of law.

■ Neither does the fact that appellants were not given specific, individual notice of the assessments. Revenue and Taxation Code section 1601 and Government Code section 6040 require publication in a newspaper of general circulation of the time the board will meet to equalize assessments. Revenue and Taxation Code section 1603 at all times pertinent required the board to meet on the first Monday in July to equalize the assessment

---

[6]In any event, no denial of equal protection is present. No suspect classification is involved. In matters of taxation a legislative classification must be sustained where there is any rational basis for it. (*Franklin Life Ins. Co.* v. *State Board of Equalization*, 63 Cal.2d 222, 233 [45 Cal.Rptr. 869, 404 P.2d 477].) The special expertise in property valuation assignable to county boards of equalization justifies their classification as judicial bodies by California Constitution article XIII, section 9, with the consequential limitation on scope of review of their decisions to the substantial evidence test (*Strumsky* v. *San Diego County Employees Retirement Assn.*, 11 Cal.3d 28, 36, 41-42 [112 Cal.Rptr. 805, 520 P.2d 29]) while taxes of a different nature are administered by nonjudicial boards whose decisions may be more broadly reviewed by the courts.

[7]The California Constitution in fact classifies county boards of equalization as vested with judicial power (fn. 5, *supra*).

of property and to continue in session for that purpose "until the business of equalization is disposed of, but not later than the third Monday in July."[8] Appellants do not claim that the statutory requirements for time of fixing their assessments or for publication of notice were not met. They restrict their argument of denial of due process of law to a purported constitutional deficiency in the process of notice by publication. That argument fails because of the existence of the statutory scheme specifying the time of hearings to equalize assessments. ". . . [W]here a tax is levied on property not specifically, but according to its value, to be ascertained by assessors appointed for that purpose upon such evidence as they may obtain . . . [t]he officers in estimating the value act judicially; and in most of the States provision is made for the correction of errors committed by them, through boards of revision or equalization, sitting at designated periods provided by law to hear complaints respecting the justice of the assessments. The law in prescribing the time when such complaints will be heard, gives all the notice required, and the proceeding by which the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law." (*Hagar* v. *Reclamation District No. 108,* 111 U.S. 701, 710 [28 L.Ed. 569, 572-573, 4 S.Ct. 663]; see also *Merchants' Bank* v. *Pennsylvania,* 167 U.S. 461, 466-467 [42 L.Ed. 236, 238-239, 17 S.Ct. 829]; *Lahman* v. *Hatch,* 124 Cal. 1, 7 [56 P. 621].)

Here the statutory scheme prescribes the time when complaints with respect to the ad valorem tax assessment may be heard by the county board of equalization. It thus satisfies the notice requirements of due process as that requirement is spelled out in *Hagar.* Appellants argue that later decisions of the United States Supreme Court, notably *Mullane* v. *Central Hanover Tr. Co.,* 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652], have implicitly overruled the principle of *Hagar.* In *Mullane,* the United States Supreme Court held inadequate for the purpose of due process notice by publication to beneficiaries of trusts whose whereabouts were known to the trustee. In so doing, however, it expressly stated that it was not disturbing any of its established rules of notice meeting due process requirements. (339 U.S. at p. 314 [94 L.Ed. at p. 873].) In essence, *Mullane* teaches that the notice requirement of due process is a flexible one requiring only that notification of governmental action be reasonable in the particular circumstances in which it is taken. (Cf. *Covey* v. *Town of Somers,* 351 U.S. 141 [100 L.Ed. 1021, 76 S.Ct. 724], with *Nelson* v. *New York City,* 352 U.S. 103 [1 L.Ed.2d 171, 77 S.Ct. 195]; see also *Eisen* v.

---

[8]The terminal date is directory only and the county board can continue to hear equalization matters after the third Monday in July. (*Skelly Estate Co.* v. *San Francisco,* 9 Cal.2d 28, 33-34 [69 P.2d 171].)

*Carlisle & Jacquelin,* 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140].) Cases decided by the United States Supreme Court which have not been expressly or impliedly overruled hold that in the circumstance of the assessment of ad valorem property taxes, notice by statute of the time when the assessment may be protested to an adjusting board is reasonable. That principle also distinguishes *Allen* v. *Flournoy,* 26 Cal.App.3d 774 [103 Cal. Rptr. 275], upon which appellants rely. In *Allen,* we held that notice by posting of a proceeding to determine inheritance tax did not satisfy due process requirements where the whereabouts of the beneficiaries of an estate upon whom the incidence of the tax fell were known or could be easily ascertained from the probate file. There, it was reasonable to require that the governmental authority seeking to impose the tax give actual notice because the ease with which it could be given outweighed the slight burden of actual notice in the isolated imposition of the tax. In contrast here, the ad valorem taxes are not imposed in an isolated instance but are assessed annually, and rather than a few persons, literally millions of parcels of property are involved.

We thus conclude that the existence of the statute fixing the time for protest of assessments of property tax gave sufficient notice to appellants, placing upon them the burden to inform themselves from public records available to them of the detail of the assessment upon their properties. (See Rev. & Tax. Code, §§ 408, 1602; *Montgomery Ward & Co.* v. *Welch,* 17 Cal.App.2d 127, 130-131 [61 P.2d 790].)

*Disposition.* Each of the judgments is affirmed.

Lillie, Acting P. J., and Hanson, J., concurred.

A petition for a rehearing was denied October 23, 1974, and appellants' petition for a hearing by the Supreme Court was denied December 24, 1974. Sullivan, J., did not participate therein.